UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
**CARLOS ZARATE**,                                            :
                                                              :
               Plaintiff,   :
                                                              :  **MEMORANDUM DECISION AND**
      – against –                         :  **ORDER**
                                                              :
                                                              :  22-CV-1178 (AMD) (LB)
**CHASE BANK**,                                               :
                                                              :
               Defendant.   :
                                                              :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On February 3, 2022, the *pro se* plaintiff sued the defendant in the New York Supreme Court, Queens County, alleging a series of unauthorized withdrawals from his bank account. On March 3, 2022, the defendant removed the action to this Court, invoking diversity jurisdiction. On April 11, 2022, the defendant moved to dismiss the complaint. For the reasons set forth below, the defendant's motion is granted, and the complaint is dismissed in part with prejudice and in part without prejudice.

## BACKGROUND

This action concerns a series of allegedly unauthorized withdrawals from the plaintiff's Chase Bank accounts between June 2019 "until 2021." (ECF No. 1-2 at 2.) The plaintiff claims that on June 6, 2019, he deposited $152,000 of "severance pay" into a Charles Schwab account, which was then transferred to his Chase account in three separate allotments. (ECF No. 22.)[1]

---

[1] The facts are drawn from the complaint, as well as from the plaintiff's filings in response to the defendant's motion. "[B]ecause a *pro se* plaintiff's complaint must be construed liberally, it is appropriate for the court to consider the factual allegations in plaintiff's opposition materials to supplement the allegation in her Complaint." *Davis v. N.Y.C. Dep't of Educ.*, No. 10-CV-3812, 2012 WL 139255, at *3 (E.D.N.Y. Jan. 18, 2012) (citation omitted).

On June 27, 2019, after all the money reached the plaintiff's Chase account, an unnamed Charles Schwab employee began stealing his money through regular withdrawals—largely from the same ATM and often multiple times a day. (*Id.*; *accord* ECF No. 8-3.) On September 11, 2019, the plaintiff opened two new Chase accounts. (ECF No. 8-1 at 7.) That same day, the money remaining in his original account was transferred to the new ones. (ECF No. 8-3 at 39.) According to the plaintiff, however, the same Charles Schwab employee also stole from these accounts, allegedly making multiple ATM withdrawals from the same ATM every day from 2019 "until 2021." (ECF Nos. 1-2, 22.) The plaintiff contacted the police and the FBI (ECF No. 22); however, he does not allege that he reported the unauthorized withdrawals to Chase prior to filing his lawsuit.

## LEGAL STANDARD

To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (alteration and citation omitted).

A court reviewing a Rule 12(b)(6) motion to dismiss "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." *Williams v. Time Warner, Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir.

2

2002)); *see also Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 608 (E.D.N.Y. 2017) ("A document is integral to the complaint where the plaintiff (1) has actual notice of the document and its information and (2) has relied upon the documents in framing the complaint." (citation omitted)).

When a party submits additional evidence in connection with a motion to dismiss, a court "must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" *Potente v. Citibank, N.A.*, 282 F. Supp. 3d 538, 543 (E.D.N.Y. 2017) (citations omitted). Both parties include exhibits with their motion papers, but neither party requests that I convert this motion into a summary judgment motion. I therefore consider only exhibits that are integral to the complaint or incorporated in it by reference, to include: (1) the Deposit Account Agreements (ECF No. 8-2), and (2) the plaintiff's account statements for the relevant period (ECF Nos. 8-3, 8-4. 8-5).[2] It is "clear on the record" (*see* ECF No. 8-1) that "no dispute exists regarding the authenticity or accuracy of the document[s]" and that "no material disputed issue of fact" exists "regarding the relevance of the document[s]." *Walter v. Queens Coll.*, 390 F. Supp. 3d 382, 393 (E.D.N.Y. 2019); *see Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000) (considering plaintiff's Cardholder Agreement, account history and monthly statements on a motion to dismiss where the plaintiff did not contest their use).

---

[2] Chase also attaches to its motion to dismiss a "a publically [sic] available printout from MapQuest evidencing the distance between Plaintiff's residence . . . and the Chase branch" at which most of the withdrawals from the plaintiff's accounts allegedly took place. (ECF Nos. 8-1, 8-5.) I do not consider this printout because it is not integral to the complaint or incorporated by reference. For the same reasons, I do not consider the documents attached to the plaintiff's affidavit in opposition to Chase's motion to dismiss (ECF No. 10), aside from the account statements duplicating those that Chase provided.

Because the plaintiff is proceeding *pro se*, I construe the pleadings liberally and evaluate them by "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The plaintiff's claims must be "read to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quotations and citations omitted). Nevertheless, I must dismiss an *in forma pauperis* action if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the Court must grant leave to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## DISCUSSION

Reading the pleadings liberally, I interpret the complaint to assert (i) a violation of the Electronic Fund Transfer Act, 15 U.SC. § 1693 *et seq.*, and (ii) a breach of the Deposit Account Agreement between the plaintiff and the defendant. *See, e.g.*, *Apostolidis v. JPMorgan Chase & Co.*, No. 11-CV-5664, 2012 WL 5378305, at *5, *8 (E.D.N.Y. Nov. 2, 2012) (where plaintiff alleged that bank released funds from plaintiff's bank account without his authorization, court "constru[ed] plaintiff's amended complaint to assert violations of the EFTA," which it analyzed on the merits, and state-law claims, over which it declined to exercise supplemental jurisdiction).

### I.    Electronic Fund Transfer Act

The Electronic Fund Transfer Act ("EFTA") is a consumer protection law that sets forth a "framework establishing the rights, liabilities, and responsibilities of participants in electronic fund . . . transfer systems." 15 U.S.C. § 1693(b). An "electronic fund transfer" is "any transfer of funds, other than a transaction originated by check [or a] similar paper instrument, which is

4

initiated" electronically to "order, instruct, or authorize a financial institution to debit or credit an account." *Id.* at § 1693a(7). An ATM transaction is an electronic fund transfer. *Id.* The EFTA includes a private right of action against a bank that "fails to comply with any provision" of the statute. *Id.* at § 1693m(a); *see also Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579, 584 (9th Cir. 2021). To do so, a plaintiff must allege that (1) the relevant accounts "were demand deposit, savings deposit, or other asset accounts" "established primarily for personal, family, or household purposes;" and (2) "the unauthorized electronic fund transfer was initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account." *Apostolidis*, 2012 WL 5378305, at *5 (citation omitted).

The EFTA also sets forth a procedure for resolving electronic fund transfer errors, including, as relevant here, when a customer believes his bank transferred money into or out of his account without authorization. 15 U.S.C. § 1693f; *see also id.* at § 1693f(f)(1) (defining "error" to include "unauthorized electronic fund transfer[s]"). Specifically, a customer must notify the bank of an unauthorized transfer within 60 days after he receives the first statement disclosing the error. *Id.* at § 1693g(a); 12 C.F.R. § 1005.11(b)(1). Notice must (1) "enable[] the financial institution to identify the name and account number of the consumer;" (2) "indicate[] the consumer's belief that the documentation . . . contains an error and the amount of such error; and (3) set[] forth the reasons for the consumer's belief (where applicable) that an error has occurred." 15 U.S.C. § 1693f(a). If notice is timely, a customer is liable for the lesser of $50 or the amount improperly withdrawn before the customer notifies the bank or before the bank becomes aware of the error. *Id.* at § 1693g(a)(1)-(2). If notice is not timely, the bank is not liable "for losses the financial institution establishes would not have occurred but for the failure

5

of the consumer to report the unauthorized transfers or errors that appear on the statement within sixty days of the statement." *Id.* at § 1693g(a).  However, even without timely notice, "the Bank remains liable for unauthorized debits that occurred during the sixty day period, provided the customer brings a claim within the statute of limitations." *Zaidi*, 2021 WL 848864, at *4 (citing *Camacho v. JPMorgan Chase Bank*, No. 14-CV-4048, 2015 WL 5262022, *3 (N.D. Cal. Sept. 9, 2015)); *see also* 12 C.F.R. § 1005.6(b)(3) (limiting a customer's liability to "the amount of the unauthorized transfers that occur after the close of the 60 days and before notice to the institution, and that the institution establishes would not have occurred had the consumer notified the institution within the 60-day period").  The statute of limitations requires a plaintiff to file a claim against the financial institution "within one year of the date of the unauthorized transfer at issue."  15 U.S.C. § 1693m(g).

      According to the plaintiff, the first unauthorized withdrawal occurred on June 27, 2019; however, it does not appear that he notified the defendant within 60 days after he received the statement reflecting that withdrawal.  Moreover, the plaintiff does not allege that the withdrawals would have continued even if he had notified the defendant.  *Widjaja*, 21 F.4th at 584 (explaining that the plaintiff must make such allegations to plead an EFTA claim based on a violation of § 1693g).  Rather, he alleges that the same individual made each withdrawal (ECF No. 22), and that, according to his account statements, nearly all the withdrawals were made from the same ATM (ECF Nos. 8-3, 8-4, 8-5, 10).  Under these circumstances, the plaintiff does not state a claim under the EFTA for the withdrawals that occurred more than 60 days after the plaintiff first became aware of the June 27, 2019 withdrawal—that is, all subsequent withdrawals that the defendant could have prevented if the plaintiff had notified it of the first withdrawal.  *See Overby v. Chase Manhattan Bank*, 351 F. Supp. 2d 219, 225 (S.D.N.Y. 2005) (finding the

6

plaintiff "barred from asserting any [EFTA] claims" because he did not notify the bank "within the required time period").

As explained above, a plaintiff must bring an EFTA claim "within one year from the . . . violation." 15 U.S.C. § 1693m(g). The defendant argues that, where someone makes "a series of alleged unauthorized withdrawals," courts interpret the limitations period to begin on "the date of the first alleged unauthorized withdrawal . . . ." (ECF No. 7-15 at 17 (citing *Benzemann v. Citibank N.A.*, 806 F.3d 98, 98 (2d Cir. 2015); *Zaidi*, 2021 WL 848864, at *4–5).)

The Court is not aware of any decision in this circuit addressing how the statute of limitations applies in a Section 1693g case where there are independent, repeated unauthorized withdrawals from one account. However, courts in other circuits have concluded that repeated unauthorized transfers are "independently actionable," *Diviacchi v. Affinion Grp., Inc.*, No. 14-CV-10283, 2015 WL 3631605, at *10 (D. Mass. Mar. 11, 2015), *report and recommendation adopted in relevant part*, 2015 WL 3633522 (D. Mass. June 4, 2015), if they are not "reoccurring or otherwise linked by a precipitating agreement between the bank and the consumer (i.e. preauthorized)," *Soileau v. Midsouth Bancorp, Inc.*, No. 19-CV-537, 2019 WL 5296499, at *4 (W.D. La. July 19, 2019), *report and recommendation adopted*, 2019 WL 5296505 (W.D. La. Oct. 18, 2019). *See also Widjaja v. JPMorgan Chase Bank, N.A.*, No. 19-CV-7825, 2019 WL 8108716, at *6 (C.D. Cal. Nov. 19, 2019) (collecting cases). The withdrawals at issue here are individual, independent transfers, even though the same person allegedly made each one, "because [they are] new transfer[s] that cause[] new harm to [the] plaintiff in an amount . . . 'over and above' the prior transfers." *Diviacchi*, 2015 WL 3631605, at *10. Therefore, each individual transfer triggers its own one-year limitations period. *Widjaja*, 2019 WL 8108716, at *6.

7

Relying on *Benzemann* and *Zaidi,* the defendant argues that the statute of limitations began to run for all unauthorized withdrawals from the date of the first alleged unauthorized withdrawal.  (*See* ECF No. 7-15 at 17).  These cases are distinguishable, because they do not consider the issue in the same context.  In *Benzemann*, the plaintiff brought claims under the Fair Debt Collection Practices Act, not the EFTA.  806 F.3d at 99.  The court considered a potential interpretation of the FDCPA's statute of limitations provision that would have allowed an FDCPA claim to "accrue[] at one time for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit."  *Id.* at 101.  Following the Supreme Court's instruction to "avoid" interpretations that "create[] such an anomaly," the court held that a violation of the FDCPA "occurs" within the meaning of that statute "when a bank freezes a debtor's bank account, not when a debt collector sends a restraining notice to the bank."  806 F.3d at 101–02.  While the plaintiff in *Zaidi* made a Section 1693g claim, the statute of limitations issue arose only in the context of withdrawals that occurred *within* the 60-day notice period.  2021 WL 848864, at *5.  The court held that the bank was entitled to summary judgment as to the withdrawals occurring after the 60-day notice period, explaining that the parties did not dispute that the bank established the conditions allowing the consumer to be liable for unauthorized transfers.  *Id.* at *4-5; *see* 15 U.S.C. § 1693g(b).  The court did not address the issue here—how the statute of limitations applies to multiple withdrawals outside the 60-day notice period.

*Soileau* and *Diviacchi* provide the more appropriate analogy.  Like the plaintiff in this case, Soileau and Diviacchi claimed "that an unidentified person initiated various transfers from [their] accounts without [their] authorization."  The courts in both cases found that each transfer was "a complete and present cause of action."  *Soileau*, 2019 WL 5296499, at *4 (citations

omitted); *see also Diviacchi*, 2015 WL 3631605, at *10.  That rationale makes sense.  Accordingly, the plaintiff is not time-barred from asserting EFTA claims for withdrawals that occurred after February 3, 2021, one year before he filed this suit.

As explained above, the defendant would have been liable for unauthorized withdrawals that occurred *within* the 60 days after the plaintiff received the first account statement showing the unauthorized withdrawals if the plaintiff filed his lawsuit within the statute of limitations. *Zaidi*, 2021 WL 848864, at *4; *see also Illsley v. Truist Bank*, No. 23-CV-97, 2023 WL 3690094, at *2 (E.D.N.C. May 26, 2023).  The plaintiff, however, brought this action on February 3, 2022, more than two and a half years after the first allegedly unauthorized withdrawal on June 27, 2019.  (*See* ECF No. 1-2.)  Thus, the plaintiff's claim as to any unauthorized transfers during the 60-day notice period is barred by the EFTA's one-year statute of limitations.  15 U.S.C. § 1693m(g).

## II.     Breach of the Deposit Account Agreement

For similar reasons, the complaint does not state a breach-of-contract claim for the unauthorized transfers that occurred more than 60 days after he received an account statement reflecting the first withdrawal, as the plaintiff does not plead that he notified the defendant pursuant to the Deposit Account Agreements ("DAAs").  The DAAs, which the defendant filed as exhibits with its motion to dismiss (ECF No. 8-2), "govern[] [the parties'] respective obligations regarding the [bank accounts at issue]."  *Mraz v. JPMorgan Chase Bank, N.A.*, No. 17-CV-6380, 2018 WL 2075427, at *1 (E.D.N.Y. May 3, 2018).  The DAAs have notice and liability provisions similar to those in the EFTA.  Under the section entitled Electronic Funds Transfer Service Terms, the DAAs require the customer to alert the defendant to an error "NO LATER than 60 days after we sent you the FIRST statement on which the error appeared."  (*See,*

*e.g.*, ECF No. 8-2 at 43.)  That notice must include (1) the customer's "name and account number; [a] description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and [t]he amount of the suspected error." (*Id.* at 43–44.)  Providing proper notice is "a condition to making a claim" against the defendant.  (*Id.* at 38.)  If the customer does not provide notice "within 60 days after the statement was sent or otherwise made available to [him]," the customer "may not get back any money [he] lost after the 60 days if [the defendant] can prove that [it] could have prevented the transactions if the customer had provided timely notice.  (*Id.* at 45.)  These terms bar the plaintiff from stating a claim as to all the unauthorized withdrawals other than those occurring within the 60-day notice period.

The DAAs also include a statute of limitations provision and require a customer bringing an action against the defendant to file the lawsuit "within two years after the cause of action arises, unless federal or state law or an applicable agreement provides for a shorter time."  (ECF No. 8-2 at 38.)  As explained above, the plaintiff filed this lawsuit more than two years after the first unauthorized withdrawal.  The general rule under New York law is that a plaintiff can file a breach-of-contract claim within six years of the breach.  N.Y. C.P.L.R. § 213.  However, New York law also permits "parties to a contract . . . to agree to shorten the applicable statutory limitations period," provided that "the parties agree contractually to be bound by it, and the proposed period is reasonable."  *Sidik v. Royal Sovereign Int'l, Inc.*, 348 F. Supp. 3d 206, 213 (E.D.N.Y. 2018).  Courts applying New York law routinely uphold one-year contractual limitations periods, including for breach-of-contract claims.  *See id.* at 214 (collecting cases).  The DAAs' two-year limitations period is likewise reasonable.  Accordingly, the plaintiff's breach-of-contract claim as to the unauthorized withdrawals occurring before February 3, 2020 is time-barred.  However, as explained above, the claim is not time-barred as to withdrawals

10

occurring after that date, because "[a] cause of action [arose]" with each individual withdrawal. *See Soileau*, 2019 WL 5296499 at *4; *Diviacchi*, 2015 WL 3631605, at *10.

### III. Equitable Tolling

The plaintiff has not argued that equitable tolling should apply to his time-barred claims. Regardless, I have considered whether there is a sufficient basis to toll the statute of limitations. I find there is not.

Statutes of limitations may be tolled in "rare and exceptional circumstance[s]," *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (citation omitted), in which a party is "prevented in some extraordinary way from exercising [their] rights," *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (citation omitted). To determine whether equitable tolling is appropriate, courts must consider whether the party seeking to toll the limitations period "(1) has acted with reasonable diligence during the time period [they] seek[] to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003) (citation omitted).

The plaintiff has not shown that he acted with reasonable diligence or that extraordinary circumstances exist to support tolling. The plaintiff became aware of the first unauthorized withdrawal on the same day the withdrawal occurred. (ECF No. 22.) He "has not alleged that there was anything preventing [him] from filing this lawsuit" that day, or at any time after that. *Apostolidis*, 2012 WL 5378305, at *8. No extraordinary circumstances appear to apply here either. As such, equitable tolling does not apply to the plaintiff's time-barred claims.

### IV. Leave to Amend

Though the plaintiff has not requested leave to amend his complaint, I have considered whether he should be given an opportunity to do so. Under Rule 15(a) of the Federal Rules of

11

Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Pursuant to this liberal standard, I grant the plaintiff leave to amend his complaint as to (i) the EFTA claim for unauthorized withdrawals occurring after February 3, 2021 and (ii) the breach-of-contract claim for unauthorized withdrawals occurring after February 3, 2020.

I decline to afford the plaintiff leave to amend his complaint as to the withdrawals preceding those dates. There is no additional allegation that can revive the plaintiff's cause of action as to those withdrawals "because dismissal is not based upon pleading deficiencies, but rather the applicable statute of limitations." *Apostolidis*, 2012 WL 5378305, at *9. Therefore, the complaint is dismissed in part with prejudice and in part without prejudice.

**CONCLUSION**

For the reasons stated above, the complaint is dismissed as set forth above. 28 U.S.C. § 1915(e)(2)(B). In light of the plaintiff's *pro se* status, the Court grants the plaintiff leave to amend the complaint within 30 days.

In the amended complaint, the plaintiff must provide the date, location and a short plain statement of the relevant facts supporting each claim against the defendant. The plaintiff is cautioned that he can only represent himself and must allege facts that are personal to him. If applicable, the plaintiff must provide facts to show why his claims are not time-barred or provide reasons for his failure to timely file the claim(s).

If the plaintiff decides to file an amended complaint, it must be captioned "Amended Complaint" and bear the same docket number as this order: 22-CV-1178 (AMD) (LB). The plaintiff is advised that the amended complaint completely replaces the original complaint. That is, the amended complaint must stand on its own without reference to the original complaint. All further proceedings shall be stayed for 30 days. If the plaintiff fails to file an amended complaint within the time allowed or fails to show good cause for an extension to file the amended complaint, the Clerk of Court shall be directed to enter judgment and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to the plaintiff along with a general complaint form and to note the mailing on the docket.

**SO ORDERED.**

                s/Ann M. Donnelly
                _____
                ANN M. DONNELLY
                United States District Judge

Dated: Brooklyn, New York
     September 13, 2023

14